IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD MAJHOR, | ) | CIVIL NO. _____ |
| | ) | |
| Plaintiff, | ) | MOTION FOR PRELIMINARY IN- |
| | ) | JUNCTION |
| vs. | ) | |
| | ) | |
| GALE A. NORTON, Secretary | ) | |
| of the United States De- | ) | |
| partment of Interior, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

MOTION FOR PRELIMINARY INJUNCTION

Plaintiff RICHARD MAJHOR, by and through his
undersigned attorneys, hereby moves the Court for the issuance
of a preliminary injunction enjoining and restraining the
Defendant and her employees, agents, representatives, and
successors in interest from continuing to incarcerate and
subjecting Plaintiff to a trial in the United States Territory
of American Samoa without insuring that Plaintiff will receive
a fair and unbiased jury trial in accordance with the
requirements of the Fifth and Sixth Amendments to the United
States Constitution, inter alia.

This motion is brought pursuant to Rule 65, Federal
Rules of Civil Procedure, inter alia, and is based upon the
attached affidavit, exhibits, and memorandum of law, the files
and records herein, and the evidence and arguments to be pre-

sented at a hearing upon the motion.

DATED:   Honolulu, Hawaii, November 3, 2005.

ERIC A. SEITZ
D.C. Bar No. 363830

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD MAJHOR, | ) | CIVIL NO. _____ |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF LAW |
| | ) | |
| vs. | ) | |
| | ) | |
| GALE A. NORTON, Secretary | ) | |
| of the United States De- | ) | |
| partment of Interior, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

MEMORANDUM OF LAW

Introduction

Plaintiff RICHARD MAJHOR [hereinafter "Plaintiff"] seeks a declaratory judgment, writ of mandamus, and preliminary and permanent injunction enjoining and restraining the Secretary of the Interior and her employees, agents, representatives, and successors in interest from continuing to incarcerate and subjecting Plaintiff to a trial in the United States Territory of American Samoa without insuring that Plaintiff will receive a fair and unbiased jury trial in accordance with the requirements of the Fifth and Sixth Amendments to the United States Constitution, inter alia.

Factual Background

Plaintiff is a thirty-four year old male caucasian citizen of the United States who has been residing temporarily in the United States Territory of American Samoa with his part-

Samoan wife and her family. In March, 2003, Plaintiff was arrested by law enforcement officers and arraigned in the High Court of American Samoa on a charge of murder (Exhibit 1). Since his arrest Plaintiff has been incarcerated in American Samoa without provision for bail, without essential medical care, and without regular visitation with his wife and other family members.

The murder charge against Plaintiff arises from the disappearance of a young part-Samoan man whose body has never been found and who is alleged to have been beaten to death at Plaintiff's residence by Plaintiff and other young Samoan males. The entire case against Plaintiff relies upon the testimony of the purported co-actors, all of whom have submitted written statements implicating Plaintiff in return for promises of leniency.

From the first reports of the victim's disappearance up to and including the present time there has been intensive publicity in American Samoa surrounding Plaintiff's arrest and prosecution, and all of the proceedings involving Plaintiff and other alleged participants. News reports repeatedly have identified Plaintiff as the main perpetrator, describing the statements and collaboration of potential witnesses and asserting that the murder was part of a narcotics transaction. Both radio and local newspaper accounts have described Plaintiff as "the drug king" of American Samoa. Plaintiff also has been implicated by the media in the death of a second individ-

dual whose body was discovered in a remote area of the island although Plaintiff has not been charged in that matter (see articles attached to Exhibit 2).

In addition to the media coverage, the victim's family and others have circulated petitions concerning Plaintiff's case and have issued public demands for federal intervention in the proceedings in response to public corruption and alleged widespread narcotics crimes in the Territory (Exhibits 3 and 4). Although it is unknown just how many of the approximately sixteen thousand eligible jurors in American Samoa have been exposed to the publicity or have seen and/or signed petitions because there is no reliable means of conducting polling in American Samoa, witnesses from the media have described Plaintiff's prosecution as one of if not the largest and most notorious cases there in many years (see, e.g., Exhibit 5, at p. 14).

Because of the widespread publicity Plaintiff's counsel filed a motion for change of venue which was denied by the trial judges in an order filed on May 28, 2004 (Exhibits 6 and 7). Instead, the court sua sponte ordered that all proceedings be conducted outside the presence of spectators, including the media, and imposed a "gag order" on counsel and all other persons involved the case. Those orders have remained in effect up to the present.

On January 24, 2005, Plaintiff's counsel renewed his motion for a change of venue due to the voluminous and

continuing effects of prejudical publicity and well-documented
cultural factors in American Samoa that likely would prevent
Plaintiff from receiving a fair trial in American Samoa
(Exhibit 2). At an evidentiary hearing conducted on April 6,
2005, representatives of the local media testified as to the
extensiveness and likely impact of the coverage of Plaintiff's
case and confirmed that both the radio news and newspaper had
reported on Plaintiff's alleged drug activities and possible
involvement in another murder that has never been charged
(Exhibit 5).

Plaintiff's moving papers also included affidavits
and citations from experts on Samoan culture who described the
well organized channels of informal communication and decision-
making in Samoan villages that affect and determine public
opinion on significant issues and impede the open mindedness of
potential jurors in even the most serious criminal cases.
Anthropologist and ethnoculturalist Loia Manuele Fiaui stated
in his affidavit that long-standing hierarchical relationships
and decision-making institutions in Samoa "have a significant
and somewhat unique impact upon the thought processes, percep-
tions, and decisions of villages, families, and individuals
that is different from, and may actually clash with values and
processes that are accepted in western societies and form the
bases for certain institutions including jury trials" (Exhibit
2).

In a written order filed on April 25, 2005, the

trial court denied Plaintiff's renewed motion for change of venue and opined that the passage of time, limitation of public access to the proceedings, and appropriate voir dire would be sufficient to cure any prejudice and insure that Plaintiff receives a fair trial (Exhibit 8).

On May 2, 2005, Plaintiff timely moved for reconsideration of the trial court's order denying his renewed motion for change of venue (Exhibit 9). On May 19, 2005, the trial court heard and orally denied the motion for reconsideration and on June 14, 2005 filed its written order Confirming Bench Denial of Motions" (Exhibits 10 and 11).

Plaintiff then filed a timely appeal to the Appellate Division of the High Court of American Samoa which convened for an oral argument on September 20, 2005, and in an Order filed on October 13, 2005 denied and dismissed Plaintiff's appeal (Exhibit 12). The chief judge who presided on Plaintiff's appeal is a High Court Justice who previously had recused himself from any participation in matters related to Plaintiff because his nephew, Rudy Kruse, is one of the co-actors and potential witnesses in Plaintiff's case.

Plaintiff currently is incarcerated awaiting trial in American Samoa before a six person jury scheduled to commence on February 7, 2006.

Jurisdiction

The Secretary of the United States Department of Interior is vested with administrative, regulatory, and fiscal

authority for the administration of the United State Territory
of American Samoa and can be sued in this Court for declaratory
and injunctive relief to determine "whether she has
administered the government of American Samoa in accordance
with the requirements of the United States Constitution. King
v. Morton, 520 F.2d 1140, 1144 D.C. Cir. 1975); King v.
Andrus, 452 F. Supp. 11 (D.D.C. 1977).

Standards for Injunctive Relief

        The purpose of preliminary injunctive relief is to
preserve the relative positions of the parties until a trial on
the merits can be held. University of Texas v. Camenisch, 451
U.S. 390, 395 (1981). The party moving for interim injunctive
relief must demonstrate either: (1) a combination of probable
success on the merits and the possibility of irreparable
injury, or (2) that serious questions are raised as to inquiry
and merit, and the balance of hardship tips sharply in its
favor. Los Angeles Memorial Coliseum Commission v. National
Football League, 634 F.2d 1197, 1201 (9th Cir. 1989). An
interim restraining order may be issued when there has been a
showing that irreparable injury is imminent if relief is not
granted, and there is insufficient time to conduct an evident-
iary hearing.

        Federal District Courts are courts of equity that
have the power and are duly authorized to provide a full
panoply of injunctive relief to protect a citizen's con-

stitutional rights. Injunctive relief is appropriate especially where a citizen has "attacked the good faith of the appellees in enforcing the statutes. . . " Dombrowski v. Pfister, 380 U.S. 479, at 483-84, (1965) quoting Ex Parte Young, 209 U.S. 123, 156 (1908).

Applicable Law

Well respected treatises about Samoan society contain detailed references to the unique roles of leadership bodies comprised of chiefs, orators, and other village officials who continue to render decisions, create public opinion, and mete out punishments in matters that presumably would be handled by the courts in western democratic societies. In White and Lindstrom, Chiefs Today: Traditional Pacific Leadership and the Post-colonial State (Stanford Univ. Press 1997), the authors describe a murder case in which the killing of a chief apparently was mandated by the fono matai (local council) after which the perpetrators were merely fined and received short terms of incarceration despite their admitted premeditation and the gravity of the crime. Professor Bradd Shore analyzes a similar case that occurred in 1973 in his exemplary text, "Sala'ilua: A Samoan Mystery" (Columbia Univ. Press 1982), and, indeed in a recent criminal trial in American Samoa a murder defendant was acquitted after local leaders apparently influenced the members of the jury although his criminal conduct and intent were virtually undisputed . ASG v. Marlo Uli, HCCR No. 71-02. White and Lindstrom conclude

that "traditional leadership and the democratic process are two completely different and opposite things." White and Lindstrom, id., at p. 4.

In King v. Morton, supra, the Court of Appeals remanded a criminal defendant's application for relief from his tax evasion conviction in American Samoa and directed the District Court to determine

> whether a jury in American Samoa could fairly determine the facts of a case in accordance with the instructions of the court without being unduly influenced by customs and traditions of which the criminal law takes no notice; and whether the implementation of a jury trial would be practicable.

520 F.2d at 1147.

Two years later, in King v. Andrus, supra, the District Court enjoined the Secretary of the Interior from enforcing the judgment of conviction against Mr. King because he had not been offered a jury trial. Although the then Secretary of the Interior argued that "'Fa'a Samoa' (the Samoan way of life) encompasses a complex system of personal interrelationships manifestly adverse to a jury system" the Court found that a jury trial was at least "practicable" and that Mr. King's fundamental rights were not protected in the proceedings in which he had been convicted in the absence of a jury.

More recently in United States of America v. Kil Soo Lee, Cr. No. 01-00132 SOM (D.Hi.) (Order Denying Defendant's Motion to Dismiss filed 8-30-01) (Exhibit 13), a Hawaii

District   Court   Judge   rejected   defense   motions   to remand a
criminal  case for trial in American Samoa citing the "relative-
ly   recent   phenomenon"  of jury trials in the island territory.

As   a   United   States   citizen   facing   a   trial in a
"federal"  court  Plaintiff  is entitled to the same rights to a
jury  trial as any other criminal defendant tried in the federal
courts.  Because   juries   in American Samoa are comprised of only
six   members,   rather   than   twelve,   it   is   submitted that the
Plaintiff's   Sixth   Amendment   rights   cannot   and   will   not
adequately  be  protected  if  he  is  tried  there.   Plaintiff
submits  that  with  only  six  jurors  deciding  his  guilt the
influence  of  a single juror, or a handful of jurors, is likely
to  be  greater  and  therefore  more  prejudicial if any of the
jurors  are  partial  or biased in any manner.  Accordingly, Mr.
Majhor  strenuosly  objects to any trial in which a full jury of
twelve members is not afforded to him.

In  Williams v. Florida, 399 U.S. 78, 26 L.Ed.2d 446,
90  S.Ct.  1893  (1970),  the Supreme Court affirmed the obligation
to  provide  a  jury  of  twelve  members  to  defendants in all
federal  criminal trials;  however, the Court declined to extend
the  same  requirement  to the States.  In so doing the Court ob-
served that

> [o]ur holding does no more than leave these
> considerations to Congress and the States,
> unrestrained by  an  interpretation of the
> Sixth  Amendment  that  would forever dictate
> the  precise  number  that can constitute a
> jury.

Williams v. Florida, supra, at 103.

-9-

We are unable to locate any authority -- one way or the other -- indicating that Congress, in conformity with Williams v. Florida, ever has approved of or explicitly authorized the limited provision of a six person jury to criminal defendants in the federal unincorporated territory of American Samoa. In the absence of such explicit authority, it is submitted that Defendant Majhor cannot constitutionally be tried by a jury consisting of only six members.

> The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government.

Duncan v. Louisiana, 391 U.S. 145, 155-156, 88 S.Ct. 144, 20 L.Ed.2d 491 (1968).

Since Irvin v. Dowd, 366 U.S. 717, 722 81 S.Ct. 1639, 6 L.Ed.2d 251 (1961), it is clear that all defendants in serious criminal cases have a due process right to be tried by a panel of impartial jurors. See also Duncan v. Louisiana, supra. Indeed, "[d]ue process requires that the accused receive a trial by an impartial jury free from outside influence." Sheppard v. Maxwell, 384 U.S. 333, 362, 16 L.Ed.2nd 600, 86 S.Ct. 1507 (1966).

Where there is a legitimate concern that pretrial publicity may have impacted adversely upon the impartiality of prospective jurors, courts clearly have the duty to make sufficient inquiries and take all of the necessary steps to

minimize the effects of such publicity to insure that a particular defendant receives a fair trial. <u>Estes v. Texas</u>, 381 U.S. 532, 14 L.Ed.2nd 543, 85 S.Ct. 1628 (1965); <u>Sheppard v. Maxwell</u>, <u>supra</u>. Such steps could include the issuance of appropriate protective orders, extended and individual voir dire, changing the venue, and/or delaying the proceedings until the possible impact of publicity will have been dissipated. <u>Id.</u>

Courts cannot and should not delay taking necessary and appropriate steps to insure the impartiality of criminal proceedings and need not await a showing of "essential unfairness" when the community has been exposed to highly adverse and prejudicial information that is likely to pollute the jury pool. <u>Rideau v. Louisiana</u>, 373 U.S. 723, 726, 10 L.Ed.2d 663, 83 S.Ct. 1417 (1963).

In the instant case the Court can take judicial notice that virtually every prospective juror in American Samoa has been exposed to some publicity concerning allegations that Richard Majhor has been identified by a group of Samoans as the ring leader of a drug gang that murdered a young Samoan man in a dispute over a drug debt. Similarly, based upon the record in this case, the Court can presume that prospective members of the jury pool have heard about Mr. Majhor's alleged importation of drugs to American Samoa and his possible involvement in another, unrelated (and as yet uncharged) murder of a local male. Those facts, alone, raise a significant spectre that no

jurors can be impanelled in this case without some degree of exposure to rumors and information that cannot and should not be permitted to affect their deliberations in a minimally fair and impartial trial. Compare Sheppard v. Maxwell, supra.

In Lincoln v. Sunn, 807 F.2d 805 (9th Cir. 1987), a murder conviction from the Island of Maui was overturned, in part, because of the jurors' exposure to pretrial publicity in an island community roughly the same size as American Samoa. Although the trial judge had allowed unlimited individual voir dire in an effort to mitigate any influences of the extensive publicity, the Court of Appeals intimated that was insufficient and suggested that the trial court had erred by denying the defendant's motion for a change of venue. Lincoln's convictions eventually were vacated on remand, and the murder case was retried on the Island of Oahu. On that occasion Mr. Lincoln was acquitted by jurors who had not been exposed to the same publicity, but not until he already had been incarcerated for twelve years on charges for which he ultimately was found not guilty.

In the instant case, in light of the extensive and highly prejudicial publicity to date, it is submitted that Plaintiff should not have to wait for a trial to determine whether a fair and impartial jury can be selected. Based upon the current record there is substantial doubt that any jurors in American Samoa could enter the courtroom and steadfastly hear and determine Plaintiff's guilt or innocence based solely

upon the evidence presented at trial without being affected (1) by the publicity to which they have been exposed, (2) by the opinions expressed by chiefs and other influential local officials, and (3) by the enthnicity of the alleged victim, the Defendant, and the key prosecution witnesses. As the scholars have observed, "traditional leadership" and the existing "complex system of personal interrelationships" in American Samoa are "manifestly adverse" to the provision of a fair and impartial trial to Richard Majhor.

Conclusion

For all of the foregoing reasons, and based upon the records and files herein, Plaintiff submits that his fundamental rights to a jury trial and due process of law will be denied, and he will be irreparably harmed unless the Defendant is compelled to take all necessary and appropriate actions to insure the fairness of any trial that proceeds.

DATED: Honolulu, Hawaii, November 3, 2005.

ERIC A. SEITZ
D.C. Bar No. 363830

Attorney for Plaintiff

-13-

CERTIFICATE OF SERVICE

I  DO  HEREBY CERTIFY that one copy of the within was duly  served  this  date by via Federal Express addressed to the following:

GALE A. NORTON
Secretary of Interior
United States Department of Interior
1849 C Street, N.W.
Washington, D.C.  20240

Defendant

DATED:  Honolulu, Hawaii, November  3 , 2005.

ERIC A. SEITZ
D.C. Bar No. 363830