IN THE HIGH COURT OF AMERICAN SAMOA

TRIAL DIVISION

| | | |
|---|---|---|
| AMERICAN SAMOA GOVERNMENT, | ) | CR No. 10-03 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER DENYING MOTIONS FOR |
| | ) | CHANGE OF VENUE AND |
| RICHARD PATRICK MAJHOR, | ) | SUPPRESSION OF EVIDENCE |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before RICHMOND, Associate Justice, SAGAPOLUTELE, Associate Judge, and TAPOPO, Associate Judge

Counsel:  For Plaintiff, Julie Sione, Assistant Attorney General
For Defendant, Eric A. Seitz, *Pro Hac Vice*, and Andrew T. Stave, Assistant Public Defender

### INTRODUCTION

On February 5, 2004, Defendant Richard Majhor moved to change the venue of this prosecution, alleging presumed prejudice of prospective local jurors. On May 28, 2004, we denied Defendant's motion. On January 24, 2005, Defendant renewed his motion for change of venue on the same grounds, maintaining that a more extensive evidentiary record supported his motion. On that same date, Defendant moved to suppress testimony by several witnesses who made statements made to the police implicating Defendant in the commission of the alleged crime of murder in the first degree. On April 6, 2005, we conducted an evidentiary hearing on these matters. For the reasons below, we deny Defendant's motions.

CR No. 10-03  ORDER DENYING MOTIONS FOR
            CHANGE OF VENUE AND                    1
            SUPPRESSION OF EVIDENCE

**EXHIBIT** 8

DISCUSSION

A.  Change of Venue

Elaborating on the judicial standard stated in our prior order relating to this issue, due process entitles a defendant to "a panel of impartial 'indifferent' jurors." *American Samoa Gov't v. Wei Li Fang*, CR No. 05-03, slip op. at 2 (Trial Div. June 10, 2003) (citations omitted); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). An impartial juror need not be "totally ignorant of the facts and issues involved," but rather must be able to "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 722-23; *United States v. Hernandez*, 106 F. Supp. 2d 1317, 1318 (S.D. Fla. 2000) (observing that "[i]n these days of swift, widespread and diverse methods of communication . . . to hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard."). In general, an inquiry into actual jury bias is premature when jury *voir dire* has not yet been conducted. *Wei Li Fang*, slip op. at 3. A defendant may establish jury partiality prior to *voir dire*, however, by showing a community atmosphere of presumed prejudice. *Id.*

Sheer volume of publicity alone does not deny a defendant a fair trial. *See, e.g. Dobbert v. Florida*, 432 U.S. 282, 303

(1977).   That is, to meet his burden of establishing presumed prejudice, a defendant must further show that the (1) the nature of the pretrial publicity is sufficiently prejudicial and inflammatory, and (2) the prejudicial pretrial publicity so saturated the community as to preclude the selection of an impartial jury.   *Rideau v. Louisiana*, 373 U.S. 723, 726-27 (1963); *Wei Li Fang*, slip op. at 4 (a defendant carries "a heavy burden of showing oversaturation of highly sensationalized news coverage.").   Only in extreme circumstances may prejudice be presumed from the existence of pretrial publicity itself.   *See, e.g., Wells v. Murray*, 831 F.2d 468, 472 (4th Cir. 1987); *Wei Li Fang*, slip op. at 3 (presumed prejudice is reserved for "exceptional cases.").   A trial court customarily should take the step of conducting a *voir dire* of prospective jurors to determine if actual prejudice exists before requiring a change of venue.   *See United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991).

In the present case, Defendant argues that his renewed motion for change of venue may be distinguished from his first in that that he has now provided a larger evidentiary record which more fully emphasizes the extent to which this case has received public attention.   We first note that any alleged "increase" in the volume of media coverage in this matter is, in large part, not the result of additional media publication

subsequent to our prior order, but can be attributed primarily to Defendant's choosing not to include such evidence in his prior motion. Therefore, although we are hesitant to revisit an issue simply to allow Defendant a "second bite at the apple," we find the current record, however different in volume, to be substantially similar in substance to the old, and see no reason to depart from our prior findings.

Defendant has undeniably established that this case has received considerable media attention both through printed and radio publication. Indeed, witnesses have testified that prior to this Court's institution of a restrictive order, this case was one of the "top stories" in the local news media. Beyond the volume of coverage, however, Defendant has not met his additional burden of showing that the publicity was so inflammatory and prejudicial in the community as to render virtually impossible a fair trial and foreclose the possibility of conducting *voir dire*.

In *Bakker*, well-known televangelist James Bakker was indicted on eight counts of mail fraud, 15 counts of wire fraud, and one count of conspiracy. 925 F.2d at 731-32. Bakker moved for a change of venue, maintaining that "venomous" media coverage of his business dealings was "recent, pervasive and widespread" and established presumed prejudice that denied him his Sixth Amendment right to an impartial jury. *Id.* at 732.

The court denied his motion noting "that much of the publicity is simply not inflammatory or prejudicial" and that the vast majority of the evidence reflected unemotional, factual reports of legal proceedings with no prejudicial impact. *Id.* at 732. Moreover, examining the timing of the media attention, the court noted that the bulk of media coverage took place in 1987, approximately two years prior to Bakker's 1989 trial. In turn, the court further rejected Defendant's arguments, noting that "where considerable time has elapsed since publication, the probability or likelihood of impact is appreciably lessened." *Id.* at 732-33; *see also Patton v. Yount*, 467 U.S. 1025, 1032-33 (1984) (passage of time diminishes the effects of potentially prejudicial publicity).

So, too, in the present case. Having reviewed the record provided in Defendant's present motion, we remain committed to the analysis made in our earlier evaluation. The media coverage, although extensive, lacks sensationalism and focuses primarily on factual matters, such as court hearings, the nature of the criminal charges, and other matters pertaining to the investigation and prosecution of parties suspected in the disappearance of Wyatt Bowles, Jr. The vast majority of coverage is not emotional and inflammatory so as to have a prejudicial impact on Defendant in the community.

CR No. 10-03   ORDER DENYING MOTIONS FOR        5
               CHANGE OF VENUE AND
               SUPPRESSION OF EVIDENCE

Moreover, as in *Bakker*, we note that we issued a restrictive order on media coverage on August 13, 2003, for the very purpose of ensuring a fair and impartial jury by the time of Defendant's trial. Furthermore, for the same purpose, most in-court proceedings have been closed to the public since the onset of this and related prosecutions. With Defendant now scheduled for a July 2005 trial, nearly two years after the restrictive order was implemented, we are satisfied that, in the context of a "presumed prejudice" analysis, the passage of time has served the purpose of dissipating any effects of the publicity that has occurred to date.

In addition to media coverage alone, Defendant argues that it is unclear whether Samoan residents can impartially consider evidence presented in this case in light of opinions expressed by local chiefs and the ethnicity of the alleged victim, the Defendant, and the key prosecution witness. Defendant does not dispute the findings made in *King v. Andrus* nearly 25 years ago that the institution of a jury trial is not inherently impractical or anomalous with Samoan culture. 452 F. Supp. 11 (D.D.C. 1978). Defendant asserts, rather, that when examined with the specific facts and charges in this case, an all or majority Samoan jury is presumptively incapable of acting impartially due to entrenched cultural perspectives and the race of the parties. We strongly reject this proposition. *See,*

e.g., *United States v. Nururdin*, 8 F.3d 1187, 1190 (7th Cir. 1993) (rejecting defendant's contention that an all-white jury was incapable of acting impartially because of an alleged lack of understanding of inner-city life and its problems).

Recognizing that a defendant has the right to an impartial jury that can view him without racial animus, the Supreme Court notes that there is a distinction between discriminating against jurors on account of race and exercising a peremptory challenge to remove an individual juror who harbors racial prejudice. *Georgia v. McCollum*, 505 U.S. 42, 59 (1992). The Court has firmly rejected the view that assumptions of partiality based on race provide a legitimate basis for disqualifying a person as an impartial juror. *Id*. In turn, just as the court in *King* found that a Samoan jury could impartially assess a case involving a white, U.S. citizen, we will not give credence to any insinuation that we can make a dispositive evaluation of juror partiality based upon the pigmentation of skin, the accident of birth, or the culture in which the prospective juror or defendant has been born. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991) (stating additionally that "[o]ther means exist for litigants to satisfy themselves of a jury's impartiality without using skin color as a test.").

Finally, Defendant argues, that because criminal juries in American Samoa are comprised of six rather than 12 members, the

CR No. 10-03   ORDER DENYING MOTIONS FOR             7
               CHANGE OF VENUE AND
               SUPPRESSION OF EVIDENCE

influence of a single juror, or a handful of jurors, is likely to be greater, therefore rendering the need for a change in venue to a location where a "full" 12-person jury will be impaneled.    First, the notion that a jury of less than 12 is somehow inherently likely to be more prejudicial because of its size is misplaced.    In *Williams v. Florida*, the Supreme Court observed that:

> while in theory the number of viewpoints represented on a randomly selected jury ought to increase as the size of the jury increases, in practice the difference between the 12-man and the six-man jury in terms of the cross-section of the community represented seems likely to be negligible . . . the concern that the cross-section will be significantly diminished if the jury is decreased in size from 12 to six seems an unrealistic one.

399 U.S. 78, 102 (1970).

More importantly, aside from the practical implications of a smaller jury, the *Williams* Court concluded, contrary to Defendant's contention, that as a constitutional matter "the 12-man panel is not a necessary ingredient of 'trial by jury,'" under the Sixth Amendment.    *Id.* at 89; *see also U.S. v. Ahmad*, 974 F.2d 1163, 1165 (9th Cir. 1992).    The *Williams* Court noted that despite common law references to a jury of 12, the Sixth Amendment makes no such requirement, requiring simply "the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."    U.S. CONST. amend.

VI; *Williams*, 399 U.S. at 96.    Absent such a requirement, the *Williams* court concluded that:

> the fact that the jury at common law was composed of precisely 12 is a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance 'except to mystics.'  To read the Sixth Amendment as forever codifying a feature so incidental to the real purpose of the Amendment is to ascribe a blind formalism to the Framers which would require considerably more evidence than we have been able to discover in the history and language of the Constitution or in the reasoning of our past decisions.    We do not mean to intimate that legislatures can never have good reasons for concluding that the 12-man jury is preferable to the smaller jury, or that such conclusions--reflected in the provisions of most States and in our federal system are in any sense unwise.  Legislatures may well have their own views about the relative value of the larger and smaller juries, and may conclude that, wholly apart from the jury's primary function, it is desirable to spread the collective responsibility for the determination of guilt among the larger group . . . .    Our holding does no more than leave these considerations to Congress and the States, unrestrained by an interpretation of the Sixth Amendment that would forever dictate the precise number that can constitute a jury.

*Williams*, 399 U.S. at 102-03 (internal citations omitted); *see also Ballew v. Georgia*, 435 U.S. 223, 239 (1978) (concluding subsequent to *Willams* that as a constitutional matter a jury panel of *less than* six members violates the Sixth Amendment); *U.S. v. Smith*, 789 F.2d 196, 204-05 (3d Cir. 1986)(noting that pursuant to FED. R. CRIM P. 23(b) a valid criminal verdict may be returned in federal court by a jury of 11 and not 12).

Because there is no constitutional obligation for either federal or state governments to require a precise 12-member jury, and that such considerations are of legislative concern, we defer to our own legislative procedures applicable in the territory which have held since 1978 that a six person jury can effectively provide a defendant with a deliberative body large enough to represent a cross-section of the territorial community. See A.S.C.A. § 3.0232(a). That the federal government has made no objection in the last 25 years to the section 3.0232(a) "six persons" jury requirement indicates that it too finds the statute wholly consistent with the purpose of the Sixth Amendment.

As Defendant correctly observes, courts have the duty to take necessary steps to minimize the effects of prejudicial influences to insure that a defendant receive a fair trial, such as issuing protective orders, delaying proceedings, extending voir dire, or changing venue. Recognizing that a court should find presumed prejudice only in extreme circumstances, we reiterate that we have taken all necessary steps to date, including issuing a restrictive order on media coverage and delaying trial, to provide Defendant with a fair trial. Although we conclude that Defendant has not met his burden of showing presumed prejudice at this time, we acknowledge that this does not mean that individual members of the jury venire

will not harbor such prejudice. In that vein, we intend to conduct a thorough *voir dire* process to determine whether media coverage or other factors complained of have caused *actual* bias among potential jurors. Prior to that time, however, a change of venue is premature.

## B. Suppression of Evidence

Defendant alleges that the substance of the statements made to the police by Victor Sepulona, Talofa Seumanu, Sanele Mareko, Rudy Kruse, Paulava Malala, and Amerikasamoa Jake Malala was fabricated and tampered with by law enforcement and thereby amounts to knowing use of false testimony against Defendant in violation of Defendant's Fifth Amendment due process rights.

A prosecuting attorney represents a sovereign whose obligation in a particular case is not necessarily to win, but to do justice. *Commonwealth of The Northern Mariana Islands v. Mendiola*, 976 F.2d 475, 486 (9th Cir.1992). In fulfilling this mandate, it is clear that the state may not use false evidence to obtain a criminal conviction. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). A conviction obtained through "use of false evidence, known to be such by representatives of the State," violates a defendant's due process rights, as does allowing unsolicited false evidence to go uncorrected when it appears. *Id.* at 269; see *also Alcorta v. Texas*, 355 U.S. 28 (1957). To prevail on claim that the prosecution knowingly introduced

CR No. 10-03  ORDER DENYING MOTIONS FOR                     11
           CHANGE OF VENUE AND
           SUPPRESSION OF EVIDENCE

perjured testimony, a defendant is required to demonstrate that: (1) the testimony was false, (2) the prosecution knew the testimony was false, and (3) there is a reasonable probability that the false testimony could affect the verdict. *See United States v. Roane*, 378 F.3d 382, 400-01 (4th Cir. 2004).

In the present case, Defendant has not met his burden. Defendant has undoubtedly provided evidence suggesting that statements made by the witnesses among themselves or to other inmates differs from testimony made to police authorities regarding the same circumstances. Defendant has provided insufficient evidence, however, to establish that officials deliberately and knowingly put into the mouths of witnesses words that the witnesses had not said and did not believe to be true. *See Guerra v. Collins*, 916 F. Supp. 620, 635 (S.D. Tex. 1995). That Defendant asserts that certain witness statements were written or typed by officers and signed by the witnesses, without more, merely suggests that such statements were dictated by witnesses and transcribed by officers. At best, Defendant has shown simply that the alleged subsequent witness statements contradict prior testimony made to the Government, but has not demonstrated which of the conflicting statements were false, or whether the alleged change of testimony was the willful creation of the witnesses themselves without knowing state coercion. *See Oltarzewski v. Martinez*, 50 F.3d 17 (9th Cir. 1995) (allegations

amounting to "mere speculation" without more are not sufficient evidence to establish that statements are untrue or that the prosecutor knew they were untrue).

As such, we do not find a basis to suppress the testimony of the several witnesses named above, nor their pretrial statements. Depending on circumstances arising during the trial, the statements themselves may or may not be admissible at that time. In turn, any admissible evidence Defendant has as to the veracity of the witnesses' statements made to police authorities, or that the Government has as to the veracity of alleged statements made during their incarceration, may be addressed on its merits before the trier of fact.

### ORDER

Defendant has not met his burden of establishing presumed prejudice to warrant a change of venue prior to *voir dire*. Likewise, Defendant has not demonstrated knowing use of false testimony to justify suppression of the named witnesses' testimony or statements. Accordingly Defendant's motions are denied.

It is so ordered.

Dated: _4/25/05_ _____
LYLE L. RICHMOND
Associate Justice

Certified to be a true copy of the original on file
in the Office of the Clerk of the High Court

_____
Clerk of the High Court  4/25/05

CR No. 010-03   ORDER DENYING MOTIONS FOR    13
CHANGE OF VENUE AND
SUPPRESSION OF EVIDENCE

_____    _____
SAGAPOLUTELE MALAEOLA A.A.       TAPOPO T.M. VAIFANUA
Associate Judge                  Associate Judge